UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| GARY SIFUENTES, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ROOFLINE, INC. d.b.a. ROOFLINE SUPPLY & DELIVERY, an Oregon corporation; and DOES 1 through 100, inclusive,<br><br>Defendant. | No. 2:20-cv-00052 WBS KJN<br><br><br>ORDER RE: MOTION TO REMAND |

----oo0oo----

Plaintiff Gary Sifuentes filed this class action against defendant Roofline, Inc. ("Roofline") in Sacramento County Superior Court alleging various violations of the California Labor Code. (Compl. (Docket No. 1-1, Ex. A).) Defendant removed the action to this court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). (Notice of Removal (Docket No. 1).) Before the court now is plaintiff's

1

motion to remand for failure to meet the required amount in controversy. (Docket No. 9.) Because of the current situation with regard to the Coronavirus and this court's General Orders relating thereto, the court decides the motion without oral argument.

I. Background

Defendant employed plaintiff as a non-exempt driver/mover in Sacramento for over ten years. (Compl. ¶¶ 4, 13.) Plaintiff brings this action on behalf of current and former non-exempt California-based employees from November 27, 2015 to the date of final judgment. (Compl. ¶ 25.) Plaintiff alleges seven causes of action in connection with his complaint: (1) failure to pay overtime wages (Labor Code §§ 204, 510, 558, 1194, 1198); (2) failure to provide meal periods (Labor Code §§ 226.7, 512); (3) failure to provide rest periods (Labor Code § 226.7); (4) failure to provide wages due at separation of employment (Labor Code §§ 201-203); (5) failure to provide accurate itemized wage statements (Labor Code § 226); (6) failure to reimburse necessary business expenses (Labor Code §§ 2802-2804); and (7) violation of California's Business & Professions Code § 17200, et seq. Defendant filed a notice of removal based on CAFA on January 6, 2020. (Docket No. 1.)

II. Discussion

"Congress designed the terms of CAFA specifically to permit a defendant to remove certain class or mass actions into federal court." Arias v. Residence Inn by Marriott, 936 F.3d 920, 924 (9th Cir. 2019) (internal citations omitted). It was intended to be interpreted "expansively." Id. However, certain

threshold requirements, such as the amount in controversy, must still be met. "CAFA provides the federal district courts with 'original jurisdiction' to hear a 'class action' if the class has more than 100 members, the parties are minimally diverse, and the 'matter in controversy exceeds the sum or value of $5,000,000.'" Standard Fire Ins. Co. v. Knowles, 568 U.S. 588, 592 (2013) (citing 28 U.S.C. § 1332(d)(2), (d)(5)(B)).

To determine the amount in controversy, the court must first look to the complaint. Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1197 (9th Cir. 2015). Here, the complaint does not allege a specific amount of damages. Instead, it merely states that the amount in controversy for the plaintiff and the class members "in aggregate, is less than $5,000,000." (Compl. ¶ 8.) Where, as here, the plaintiff "affirmatively states that the amount in controversy does not exceed $5 million," a removing defendant "has the burden to put forward evidence showing that he amount in controversy exceeds $5 million . . . and to persuade the court that the estimate of damages in controversy is a reasonable one." Ibarra, 775 F.3d at 1197. This includes affidavits, declarations, or "other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." Id.

Defendant submitted a declaration from Carla Elliot, Manager of Payroll Services for defendant Roofline's payroll services, SRS Distribution, Inc. in support of its motion to remand. (See Decl. of Carla Elliot ("Elliot Decl.") (Docket No. 1-3).) Elliot declared that, based on Roofline's records, the putative class is composed of approximately 436 members who

3

"worked at least the approximate of 16,280 workweeks, consisting of an average of five (5) days per week, either (8) hours per day, during the [relevant] period." (Id. ¶¶ 4-5.) According to Elliot's review, class members would have received an average base hourly rate of $19.21. (Id.) Per the records, at least 348 putative class members were terminated from November 27, 2016 to January 2020, and at least 227 putative class members were each issued at least 41 wage statements for the applicable pay periods from November 27, 2018 to the present. (Id. ¶¶ 7-8.)

Defendants used those numbers to ascertain the maximum amount plaintiffs could seek to recover by calculating what the penalties would be if a violation occurred every work day of every pay period for every employee during the relevant time period. Consequently, defendant estimates plaintiff could claim $1,563,694 in unpaid meal premiums, $1,563,694 in unpaid rest premiums, $1,604,419 in waiting time penalties, $1,246,650 in wage statement penalties, and $1,494,614 in attorneys' fees, bringing the amount in controversy to $7,473,071. (Notice of Removal at 7.) But when a party relies on a chain of reasoning that includes assumptions, those assumptions must be reasonable. Ibarra, 775 F.3d. at 1199. While "[a]n assumption may be reasonable if it is founded on the allegations of the complaint," the Ninth Circuit has suggested "assum[ing] a violation rate of 100% may or may not [be] valid." Arias, 936 F.3d at 925.

In Arias, the Ninth Circuit found Marriott's removal calculation reasonable because it did not assume the maximum violation unless the complaint specifically used all-encompassing language, such as "not one." Id. at 926. For example, when

4

plaintiffs claimed defendants "routinely" failed to pay
compensation for missed rest and meal breaks, Marriott assumed
they missed 1 rest break per week, and calculated the amount in
controversy accordingly. Id. Conversely, Marriott used the
maximum amount when the plaintiff's complaint said "not one" of
the wage statements complied with the Labor Code. Id.

Here, defendant relied upon the broad language in the
complaint (e.g., "at all relevant times" references to
"policies/practices") to justify using the maximum potential for
violation to calculate the amount in controversy. (Opp. at 6-8,
¶¶ 15-16, 19, 23.) To calculate the amount recoverable for
unpaid meal and rest period pay, defendant took $19.21 (the
average base hourly rate for putative class members during the
four-year period) and multiplied that by 5 (five un-provided meal
periods per work week) and then multiplied that by 16,280 (weeks
worked by putative class during the applicable four-year period)
to arrive at $1,563,694. (Opp. ¶¶ 15-16.) Defendant engaged in
a similar calculation for waiting time penalties and wage
statement violations, bringing the total amount in controversy to
$5,978,457. (Id. ¶¶ 19, 25-26.) Finally, without providing
evidence, defendant argues it is "not uncommon" for a requested
attorney fee award to be around 25% of the total recovery, adding
an additional $1,494,614 to its total amount in controversy.
(Id. ¶ 27.)

While the Ninth Circuit has allowed defendants to rely
on maximum assumptions in limited instances, here, defendants
lack the level of specificity required to do so. In LaCross v.
Knight Transportation, Inc., 775 F.3d 1200 (9th Cir. 2015), the

5

Ninth Circuit found defendant's use of the maximum assumption was reasonable after the defendant included all fuel costs during the class period in its calculation of the amount in controversy. 775 F.3d at 1203. But here, to arrive at the amount in controversy, defendant relies on calculations based on averages rather than concrete costs. (Opp. ¶¶ 15-16, 19, 23, 25-26, 27.) While defendant need not "provide evidence proving the assumptions correct," the assumed rate of violations must have "some reasonable ground underlying them." Arias, 936 F.3d at 925-27 (quoting Ibarra, 775 F.3d at 1199) (internal quotations omitted). These maximum assumptions fall short of the Ninth Circuit's guidance for reasonability. See id. at 925-27. Accordingly, the defendant has failed to produce appropriate evidence to support its amount in controversy calculation, and it cannot avail itself of this court's jurisdiction.

IT IS THEREFORE ORDERED that plaintiff's motion to remand (Docket No. 9) be, and the same thereby is, GRANTED;

AND IT IS FURTHER ORDERED that this action be, and the same hereby is, REMANDED to the Superior Court of the State of California, in and for the County of Sacramento.

Dated: March 18, 2020

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE